UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

_____

In re:
    CYNTHIA DIANN MAYER-MYERS,                        Chapter 13 Case
                  Debtor.                                                   # 05-12466

_____

    CYNTHIA DIANN MAYER-MYERS,                        Adversary Proceeding
                  Plaintiff,                                         # 06-1018
            v.

    GREEN TREE SERVICING, LLC,
                Defendant.

_____

*Appearances:*       Rebecca A. Rice, Esq.              Tavian M. Mayer, Esq.
                               Rutland, Vt.                         South Royalton, Vt.
                               For the Plaintiff                 For the Defendant

**MEMORANDUM OF DECISION**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

        Cynthia Diann Mayer-Meyers (the "Plaintiff") initiated the above-referenced adversary proceeding to subordinate the claim of Green Tree Servicing, LLC ("Green Tree" or "Defendant"), alleging that Green Tree had breached its contract with the Plaintiff, and breached the fiduciary duties it owed to Plaintiff, when it advanced funds on a construction loan without the Plaintiff's consent and contrary to her explicit instructions (doc. #1).  Plaintiff objected to Green Tree having advanced those funds because she claimed that the mobile home construction was defective.

        Green Tree seeks summary judgment on several grounds. Its fundamental argument is that since the predecessor of Green Tree, Conseco Finance Servicing Corp., filed for chapter 11 relief in the U.S. Bankruptcy Court for the Northern District of Illinois in 2002, In re Conseco, Inc., et al., No. 02-B-49672, the proper venue for any action regarding the conduct of Conseco (and Green Tree) in connection with this loan is in the Bankruptcy Court for the Northern District of Illinois, not in Vermont.  It also argues that pursuant to the sale approved by the Illinois Bankruptcy Court, Green Tree obtained its interest in Plaintiff's mortgage "free and clear" of all claims and interests, and therefore any claim the Plaintiff could assert against it has been extinguished.  The Defendant also asserts that the Illinois Bankruptcy Court orders are entitled to *res judicata* and bar the Plaintiff's claim.  Lastly, the Defendant points out that since the Plaintiff has had repeated opportunities to raise her claim, and has failed to do so, she is estopped from raising it in this Court.

The Plaintiff contends that her defense to Green Tree's claim for payment is akin to a right of recoupment rather than a claim or interest, and therefore her adversary proceeding is not barred under the Sale Order entered in the Conseco bankruptcy case (doc. # 28). Alternatively, the Plaintiff asserts that notice of the Sale Order was defective and that enforcing it would violate her due process rights (Id.).

Green Tree filed a motion to dismiss or in the alternative, for summary judgment; the Court converted it to a motion for summary judgment. The parties have filed a statement of undisputed facts and supplemental memoranda, and have presented arguments at multiple hearings; the Trustee has also filed a memorandum of law opposing the Defendant's Motion for Summary Judgment (doc. # 47).

For the reasons articulated below, the Court grants Green Tree's motion for summary judgment.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 157(b)(2)(B).

## BACKGROUND FACTS

The material facts are not in dispute. In the briefing on the motion for summary judgment, Green Tree provided a thorough statement of undisputed facts to which the Plaintiff did not object. Accordingly, pursuant to Vt. LBR 7056-1(a)(3), these facts are deemed admitted. The Court sets them forth below (without the citations to the record contained in the Defendant's document).

**Section I. History and Organization of Green Tree Servicing LLC**

1. Defendant Green Tree Servicing LLC ["Green Tree"] is a limited liability corporation organized and existing under the laws of the State of Delaware as per the Certificate of Formation, filed on June 9, 2003 with the Secretary of State of Delaware.

2. On June 9, 2003, Conseco Finance Servicing Corp. ["CFSC"], originally known as Green Tree Financial Servicing Corporation, a corporation organized and existing under the laws of the State of Delaware, filed a "Certificate of Conversion From a Corporation to a Limited Liability Company Pursuant to Section 266 of the Delaware General Corporation" with the Secretary of State of Delaware converting itself to Green Tree.

3. On June 11, 2003, Green Tree Servicing LLC, filed Articles of Association for a foreign limited liability corporation with the Vermont Secretary of State. The office of the Vermont Secretary of State issued a Certificate of Limited Liability Company, dated June 11, 2003.

**Section II. The Federal Court Action.**

4. In an action filed on August 23, 2001 in the United States District Court for the District of Vermont, entitled <u>Conseco Financ[e] Servicing Corp. v. Redman Homes, Inc., Rodney Guetti, Cynthia D. Mayer</u>, Civil Action No. 2:01-cv-256 wks (D.Vt.) the following facts were established:

   a. That CFSC asserted, and Defendant Mayer submitted, to the venue and jurisdiction of the federal district court to resolve a dispute.

   b. "That Defendant Mayer [ ] asserted that [CFSC] is responsible under setoff rules, promulgated by the Federal Trade Commission to setoff rule [sic] attributable to the product delivered by Defendants Guetti and/or Redman Homes."

   c. "Further, defendant Cynthia D. Mayer admits that [CFSC], to her knowledge and belief, attempted to have defendants, Guetti and Redman Homes, resolve the issues regarding

2

the defects of the home purchased by the defendant Cynthia D. Mayer."

    d.    Defendant Mayer admitted to executing and delivering a Promissory Note to "Green Tree Financial Servicing" on September 24, 1999 in the principal amount of $88,376.40, and further admitted that the Note was secured by a Mortgage Deed which was properly recorded in the Bennington Town Land Records at Book 0-356, Page 35.

5.    A Counterclaim was filed by Defendant Cynthia D. M[ayer] in that federal court action.

6.    That Counterclaim stated in full:

    1.    Defendant Cynthia D. Mayer realleges all of the allegation[s] of [CFSC's] complaint, which had been admitted by the defendant Cynthia D. Mayer as if they were more fully set forth herein.

    2.    Pursuant to the Federal Trade Commission "holder rule" as set forth in its regulations at 16 C.F.R. 433, [CFSC] is subject to all claims and defenses, which Cynthia D. Mayer can assert against Redman Homes, Inc. and Rodney Guetti as sellers of goods and services obtained pursuant to the consumer credit transaction involved herein.

    3.    As more fully set forth in defendant Cynthia D. Mayer's cross-claims against defendants, Redman Homes, Inc. and Rodney Guetti, which cross-claims are incorporated in full herein, the home which defendant Cynthia D. Mayer purchased through defendant Rodney Guetti and which was built, produced and manufactured by defendant Redman Homes, Inc., was defective, was not what had been promised to defendant Cynthia D. Mayer, and this transaction was the result of misrepresentations and other fraudulent conduct by defendants Rodney Guetti and Redman Homes, Inc. Further, defendants, Rodney Guetti and Redman Homes, Inc., were negligent and breached their warranties in the manufacture, construction, placement, erection, and repairs to this home.

    4.    At all times relevant to this transaction, [CFSC], as a creditor, had a relationship with the seller of this home, defendant Rodney Guetti and the [CFSC] is a [sic] entity, which in the ordinary course of business makes [ ] purchase money loans or finances the sale of goods or services to consumers, such as the defendant Cynthia D. Mayer, and [did] provide such purchase money loan[ ] and financing in the sale of this home by defendants Rodney Guetti and Redman Homes Inc. to defendant Cynthia D. Mayer.

    5.    Under the FTC Holder Rule, [CFSC] is liable to defendant Cynthia D. Mayer for any judgment that is entered against defendants Redman Homes, Inc. and Rodney Guetti in favor of defendant Cynthia D. Mayer.

7.    On December 26, 2001, CFSC as 'counter-defendant' filed an Answer to the Counterclaim of Defendant Mayer, whereupon the issues were joined.

8.    By notice dated December 19, 2002, counsel for CFSC in that federal court action served a Notice of Suggestion of Bankruptcy which was filed on the docket on December 24, 2002.

9.    As a result of the filing of the Notice of Suggestion of Bankruptcy, the District Court, Sessions, J., entered an Order on January 3, 2003, which stated:

> [t]his case is hereby statistically closed due to the related matter currently pending in the United States Bankruptcy Court. Upon conclusion of the Bankruptcy Court action, parties may move within sixty days to reopen the instant case if further action by this court is necessary.

10.    As of December 14, 2006, the Civil Docket for Case # 2:01-cv-256 wks discloses no further entries.

11.    The Defendant/Counter Claimant in that federal court action is also the Plaintiff, Cynthia D. Mayer-Myers, in this adversary proceeding.

**Section III. CONSECO History.**

12.    The Vermont District Court proceeding was halted on December 17, 2002 by the filing of Conseco, Inc. et al. ["Conseco"], of a petition for relief under Chapter 11 of Title 11, United States Code in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

13.    Exhibit I of Voluntary Petition filed by Conseco, entitled "List of Filing Entities," stated:

3

> [a]long with the debtor, Conseco, Inc., the following affiliated debtors simultaneously have filed chapter 11 petitions in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division:
>
> * * *
>
> 4. Conseco Finance Corp.
> 5. Conseco Finance Servicing Corp.

14. On March 14, 2003, the Honorable Carol A. Doyle, Bankruptcy Judge in the Conseco matter, entered an order entitled: "Order pursuant to 11 U.S.C. §§ 105(A), 363, 365, and 1146(C) and Fed. R. Bank. P. 2002, 6004 and 6006 authorizing and approving: (I) Asset Purchase Agreement with CFN Investment Holdings LLC; (II) The sale of certain of the CFC Debtors' assets free and clear of liens, claims, and encumbrances; (III) Assumption and Assignment of certain executory contracts and unexpired leases; and (IV) Certain related relief."

15. In accordance with that Order, the former Conseco Finance Servicing Corp., now known as Green Tree Servicing LLC, was sold to CFN Investment Holdings LLC.

16. On June 20, 2003, the Conseco Bankruptcy Court entered a "Corrected Interlocutory and Conditional Order approving the finance company debtors third amended joint liquidation plan of reorganization subject to confirmation conditions and pursuant to Chapter 11 of the United States Bankruptcy Code" which was followed by a final order of confirmation entered by the Bankruptcy Court on September 9, 2003, entitled "Order confirming finance company debtors' sixth amended joint liquidation plan of reorganization pursuant to Chapter 11 of United States Bankruptcy Code."

17. The final confirmation order in the Conseco Bankruptcy confirmed the plan of reorganization, the Sale Order, as well as two related orders that pertained to Plaintiff's note and mortgage, the "Stipulation and consent order resolving the objection of U.S. National Bank Association, as Securitization Trustee of the CFC Debtors' third amended plan of reorganization" (the "Consent Order"), and the "Final Order approving serving arrangement for manufactured housing securitization trusts" (the "Servicing Order").

18. Green Tree is the proper party to enforce the obligation of Plaintiff's note and mortgage given to it under the Green Tree Financial Servicing Corporation.

19. Despite the actual notice of the Conseco bankruptcy filing given to Defendant Cynthia D. Mayer in the CFSC federal court proceeding, she took no action to assert any interest or protect any claims in connection with that bankruptcy proceeding. She did not file a proof of claim, seek relief from stay, or participate in that proceeding.

**Section [IV.]. The State Court Action – Bennington Superior Court**

20. On September 19, 2003, nine months after the entry of the stay in the federal court action, and during the pendency of the Conseco bankruptcy, the Plaintiff filed a verified complaint in the Bennington Superior Court, in an action entitled, <u>Cynthia D. Mayer-Myers v. Rodney Guetti and Redman Homes</u>, ignoring the pending Vermont District Court action.

21. On or about October 31, 2003, Defendant Redman Homes, Inc. answered and, filed a cross-claim against Third Party Defendant, PLG, Inc., a Vermont Corporation, alleging breach of contract and sought indemnification for the claims made by Mayer-Myers.

22. The Plaintiff's verified state court complaint stated, in relevant part:

> 17. When defendants Guetti and Redman Homes, Inc delivered the mobile home to the site, the mobile home was defective. The mobile home was not in the condition promised to plaintiff.
> 18. Defendant Guetti failed to properly prepare the site for the mobile home.

4

Defendant Guetti failed to properly construct the foundation. The foundation that defendant Rodney Guetti provided to plaintiff was defective and requires repairs.

19. The mobile home purchased by plaintiff has numerous defects. These defects include but are not limited to, the roof structure of the mobile home is defective and is failing; the foundation is cracked and was not properly sealed to prevent moisture penetrating the foundation walls; the sub-floor for the entire home is defective; the main center beam was improperly secured together; there is inadequate support for the home, and the two halves of the home are pulling apart because of the defective way this center beam was constructed and installed; there are insufficient supports for the home; kitchen cupboards were not properly installed and are pulling away from each other and the wall; doors and windows were in stalled in an improper way so that they are crooked and do not operate properly; the attic structure is defective, there are active leaks, particularly in the area above the kitchen. The overall quality of this home, both in its construction and in its erection on the site, is poor, is not what was promised to plaintiff, and is not what she paid to purchase.

* * *

22. Defendant Redman Homes, Inc. fraudulently misrepresented to Plaintiff both what repairs were necessary and the quality of the repair work that needs repair crew [sic] would do.

23. Defendant Rodney Guetti made numerous fraudulent misrepresentations to Plaintiff. . .

23. This state court complaint alleged counts in fraud, breach of fiduciary duty, conversion and larceny by trick, breach of contract, warranty and covenant of good faith, negligence, consumer fraud and unfair or deceptive trade acts or practices, and willful and wanton conduct, against Defendants Guetti and Redman Homes, Inc.

24. Green Tree was not made a party to that state court action.

25. The state court action resulted in the following:

   (i) An Order filed on June 23, 2005 approving the Stipulation for Dismissal with Prejudice, by and between Plaintiff Cynthia D. Mayer-Myers and Redman Homes, Inc.

   (ii) A Final Judgment on Third Party Action, dated June 23, 2005 in which the court ordered "That the Third-Party Defendant [PLG, Inc.] shall pay to the Third-Party Plaintiff [Redman Homes, Inc.] $32,000.00 in indemnification for the sum that Redman Homes, Inc. paid to the Plaintiff [Cynthia Mayer-Myers] in settlement; as well as costs of this action . . . [t]he total of which shall constitute the Final Judgment of this court on the third Party claims in this matter is $32,101.47.

   (iii) A Judgment Order, filed June 23, 2005, which stated:

   1. Because of his violation of Vermont's Consumer Fraud Statutes, and pursuant to 9 V.S.A. § 2461(b), judgment is awarded to Plaintiff against Defendant Rodney Guetti in the amount of $258,552.00 which is three times the consideration of $86,184.00 which plaintiff had paid to Defendant;
   2. Judgment is also awarded to Plaintiff against Defendant in the amount of $50,000.00, which is the cost of repairing defects in the house and in finishing the work that Defendant Rodney Guetti left unfinished;
   3. Also pursuant to 9 V.S.A. § 2461(b), Defendant Rodney Guetti is ordered to pay Plaintiff her attorney's fees, expenses and Court costs in the amount of $28,665.82;
   4. The total judgment awarded to Plaintiff against Defendant Rodney Guetti is $337,217.82.

**Section [V]. The Chapter 13 Proceeding and Fact Stipulation**

26. On October 16, 2005, Cynthia D. Mayer-Myers filed for relief under Chapter 13 of Title 11 United

States Code. See: In re Mayer-Myers, 05-12466 cab, Document #1.

27. On November 8, 2005, Green Tree filed a Proof of Claim in connection with that filing. That Proof of Claim had attached evidence of perfection of a security interest. That evidence consisted of:

    (a) A Promissory Note, in the principal amount of $88,367.40, dated September 24, 1999 executed and delivered by Cynthia D. Mayer to Green Tree Financial Servicing Corporation;

    (b) A Mortgage Deed from Cynthia D. Mayer to Green Tree Financi[al] Servicing Corporation, dated September 24, 1999 and recorded on September 28, 1999 in Book 0-356 page 35 of the Town of Bennington Land Records.

28. By Joint Statement of Undisputed Facts filed in connection with an objection to the plan filed by Plaintiff, as debtor, and Green Tree, agreed, in part, as follows.

> 1. Green Tree is a properly perfected first lien holder of [Plaintiff] by virtue of that certain mortgage deed from [Plaintiff] to Green Tree Financial Servicing Corp., dated September 24, 1999 and recorded on September 28, 1999, in Book 0-356 Page 35 of the Town of Bennington Land Records. See Exhibit A – Mortgage Deed.
> 2. The mortgage covers land and premises, including that certain manufactured home, a 2000 Georgetown, 56' x 28, Serial number 12235830AB, having an address of Hillside Road in Bennington, Vermont.
> 3. [Plaintiff] occupies these premises as her principal residence.
> 4. The mortgage lien secures a promissory note executed and delivered by Myers, dated September 24, 1999 in the principal amount of $88,367.00, which note is presently in default. See: Exhibit B: Promissory Note.
> 5. [Plaintiff] last made a payment on her promissory note on November 18, 2002 and is more than $32,533.00 past due. As of November 30, 2005, the payoff on this account was $116,112.96…

29. There have been no payments on this account since that stipulation.

30. On February 11, 2006, Debtor as Plaintiff commenced this adversary proceeding.

31. In response, Green Tree filed a Motion to Dismiss the adversary proceeding. Plaintiff opposed the motion. After several rounds of briefing, and multiple oral arguments, the Court, Brown, J. by order entered on October 18, 2006, converted Defendant's Motion to Dismiss to a Motion for Summary Judgment.

**Section [VI.] The Adversary Proceeding Complaint**

32. The Complaint in the adversary proceeding under consideration herein is based solely on claims arising from and out of problems that developed in connection with Plaintiff's purchase and installation of a manufactured home on her real estate, sold to her by Rodney Guetti and manufactured by Redman Homes, Inc.

33. Specifically, the Complaint alleges that Plaintiff executed and delivered a note and mortgage to Green Tree Financial Services Corporation, and that 'Green Tree Financial Services' agreed not to advance money on the construction loan without Plaintiff's authorization.

34. The Complaint asserts Plaintiff purchased a defective home from Defendants Guetti and Redman Homes, Inc. and that Green Tree Financial Services advanced payments to Defendant Guetti without authorization and the advance of those funds resulted in the home not being repaired.

35. In the Complaint, Plaintiff acknowledges obtaining a state court judgment against Rodney Guetti, but omits any mention of the settlement obtained from Redman Homes, Inc.

(doc. # 42).

In response to the Defendant's Statement of Undisputed Facts, the Plaintiff states that [t]hree additional facts must be added to the Statement of Undisputed Facts filed by Defendant."

    1.    Plaintiff was not included in Conseco's address list for service.
    2.    The language of the Notice of Sale Free and Clear in the Conseco Bankruptcy does not include the word "defenses."
    3.    Plaintiff herself received no notice of the Bankruptcy.

(doc. # 46).

The Defendant responds that points one and two were "non-traversable. The Order speaks for itself" and objected to point three. (doc. # 54).

Certain provisions of various orders entered in the Conseco bankruptcy case are also pertinent, and provide essential background, to this decision. For example, attached as Exhibit B to the January 8, 2003 Order issued by the Illinois Bankruptcy Court entitled "Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Assets of the CFC Debtors, Including Certain Buyer Protections; (II) Approving the Form and Manner of Notices and (III) Approving Procedures for Approval of the Sale," was a 14-page Notice (the "Due Process Notice"), which included the following language:

> **PLEASE TAKE FURTHER NOTICE** that by the Asset Purchase Agreement, the CFC Debtors [Conseco] propose, pursuant to Bankruptcy Code Section 363(f), to sell the CFC Debtors' assets free and clear of any claims, liens, interests and/or other encumbrances other than permitted liens, if any, which shall be defined in the Asset Purchase Agreement. If the Sale Motion is granted and the assets are sold pursuant thereto, any party that believes it may have a claim, lien, or interest or other encumbrance against, on, in or otherwise relating to any of the assets, other than a Permitted Lien, shall be forever barred from asserting or enforcing such claim, lien, interest or other encumbrance against the Proposed Purchaser or any of the assets.

(doc. # 28, Exhibit 2, Exhibit B, p. 14).

In addition, one of the provisions contained in the March 14, 2003 Sale Order (the "Sale Order") authorized the sale of certain of Conseco's assets, including the servicing rights of GTFSC, and approved the sale of GTFSC's interests in the Mayer-Meyers Mortgage. The Sale Order specifically approved Conseco's assumption of various agreements and the subsequent transfer and assignment of those agreements, including the Plaintiff's note and mortgage. The Sale Order states:

> 23.    Each non-Debtor party to an Assumed Agreement is forever barred, estopped and permanently enjoined from asserting against the Buyer or its property or affiliates, any breach or default under any Assumed Agreement, any claim of lack of consent or any other condition to the assignment thereof, or any counterclaim, defense, setoff, **right of recoupment** or any other claim asserted or assertable against the CFC Debtors, arising under or related to the Assumed Agreements and existing

7

> as of the Closing Date or arising by reason of the Sale, except to the extent expressly provided for in the Purchase Agreement.

(doc. # 42, Ex. 13, pp. 18-19, ¶ 23) (emphasis added). This paragraph, as well as paragraphs 24-26 that followed, set the closing date as the bar date for objections. Ultimately, the sale was consummated on September 9, 2003, the date of the final confirmation order (doc. # 42, Ex. 10).

The Illinois Bankruptcy Court also specifically retained jurisdiction to interpret, implement, and enforce the provisions of the Sale Order:

> 38.    This Court retains jurisdiction to enforce and implement the terms and provisions of this Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to: (a) compel discovery of the Purchased Assets to the Buyer; (b) compel assumption of the Assumed Liabilities and payment of the Purchase Price by the Buyer; (c) resolve any disputes arising under or related to the Purchase Agreement, except as otherwise provided therein; and (d) interpret, implement and enforce the provisions of this Sale Order.

(Id. at p. 22, ¶ 38). In a similar vein, paragraph 18 of the Sale Order ordered the establishment of a bar date by which any obligor under any loan or manufactured housing contract would be required to bring a claim against Conseco, and ordered that the claims of the obligors were to be channeled to the Illinois Bankruptcy Court, which "maintain[ed] continuing jurisdiction" over obligors' claims "related directly or indirectly to the CFC Debtor's servicing activities" which includes GTFSC. (Id. at p. 17, ¶ 18).

## LEGAL STANDARD FOR RELIEF BY SUMMARY JUDGMENT

Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); FED. R. BANKR. P. 7056. A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 247. In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. See id. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir. 2004); Delaware & Hudson Ry. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990). Factual disputes that are irrelevant or unnecessary are not material. See Anderson, 477 U.S. at 247. The court must view all the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. See Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992). Only disputes over facts

which might affect the outcome of the suit under the governing law preclude entry of judgment. See Anderson, 477 U.S. at 248. Here, the only fact the parties dispute is notice. Notice is a legal as well as factual issue, and the Court notes that the Plaintiff does not contest she received actual notice of the Illinois bankruptcy filing. Accordingly, summary judgment is proper here.

## DISCUSSION

### A. *The Sale Order Bars Recoupment Actions*

Although this case is fact-heavy, given the numerous legal proceedings that have taken place involving the predecessor to the Defendant and the parties themselves, and although the parties have raised numerous issues, the dispositive legal issue is relatively simple. The Plaintiff argues that her defense to payment of Green Tree's claim – as well as her claim in the adversary proceeding seeking a subordination of Green Tree's claim -- is not actually a "claim" under the Sale Order, but rather is a defense and hence is not barred by the Sale Order. Thus, she asserts that she should be allowed to enforce her rights in this adversary proceeding. The Court finds her argument unpersuasive.

In the Conseco v. Redman Homes federal court action, Plaintiff sought the "affirmative defense" of "set-off" under the Federal Trade Commission "Holder Rule" as set forth in 16 C.F.R. 433 (doc. # 42, Ex. 5, p. 3 ¶ 6), and also counterclaimed under the "Holder Rule" (id. at pp. 4-5). In her prayer for relief, she asked the court to grant her "a set off against any amounts that she might owe to plaintiff, which set off would be in the amount of her damages against defendants Redman Homes Inc. and Rodney Guetti." (Id. at p. 12 ¶ D). In this Court, midway through litigation on the issue, Plaintiff began to re-characterize the relief she seeks as "recoupment" – a defense to Green Tree's claim – which, in contrast to an affirmative claim of set-off, would not be automatically extinguished by the Sale Order (doc. # 28).

The Plaintiff has provided some authority for the proposition that her defense is akin to recoupment, and hence is distinguishable from "a claim." In In re McMahon, 129 F.3d 93 (2d Cir. 1997), the Second Circuit explained that recoupment and setoff rights are ordinarily determined by state law, and that recoupment in bankruptcy

> may occur only within a single contract or transaction or a single set of transactions. Often, recoupment seeks to avoid the unjust result that would occur if a debtor who has been overpaid pre-petition by a party in a contract is permitted post-petition to make a claim under the contract against that party without regard to the overpayment it has received.

Id. at 96. In Vermont,

> [r]ecoupment is a species of counterclaim which a defendant may assert only if it arises out of the same transaction as the plaintiff's claim, and then only as a defensive device to defeat or diminish the plaintiff's recovery. 6 C. Wright & A. Miller, Federal Practice & Procedure § 140 (1971). It is to be distinguished from a set-off, which does permit affirmative relief and which may involve an unrelated claim, but which is limited by the requirement that the claim be for a liquidated amount, or arise out of a contract or judgment. Id.

9

Quechee Lakes Corp. v. Terrosi, 141 Vt. 547, 551 (1982).

In this case, the relationship between the parties differs from the usual recoupment scenario as is found, for example, in Megafoods Stores Inc. v. Flagstaff Realty Assocs., 60 F.3d 1031 (3d Cir. 1995), where a tenant advanced funds for building repair; the landlord then filed for bankruptcy and rejected the lease; and the tenant was allowed to recoup the monies it had expended by having that sum credited against the rental payments due thereafter. The alleged "same transaction" at issue here is the contract between Green Tree and the Plaintiff: the Plaintiff's effort to subordinate Green Tree's claim arises from the contract whereby Green Tree advanced monies on the Plaintiff's behalf to contractor Guetti who provided defective workmanship. The Plaintiff asserts that it would be inequitable for Green Tree to receive secured claim status under these circumstances. In this adversary proceeding, where Mayer-Myers is the Plaintiff, that fact "does not contradict the essentially defensive nature of [her] position." Id. at 1035.

In the final analysis, however, this Court need not determine the validity of this argument because the terms of the Sale Order control the outcome of this adversary proceeding. Paragraph 23 of the Sale Order specifically states that the sale of the assets of Conseco/Green Tree Financial Servicing Corp. to Green Tree Servicing, LLC, is free and clear not only of claims and defenses, but also of the right of recoupment (doc. # 42, Ex. 13). Therefore, even if this Court were to determine that the asserted defense is legally distinguishable from a "claim," the Plaintiff would still be barred from obtaining relief against Green Tree by the unambiguous language of the Sale Order enjoining third parties from asserting any rights of recoupment.

### B. *Jurisdiction Over the Sale Order Lies with the Illinois Bankruptcy Court*

The Illinois Bankruptcy Court unequivocally retained jurisdiction over claims such as the Plaintiff's. Paragraph 18 of the Sale Order establishes a bar date by which any obligor under any loan or manufactured housing contract must bring a claim against Conseco, and orders that the claims of obligors are to be channeled to the Illinois Bankruptcy Court. That court retained jurisdiction over obligors' claims "related directly or indirectly to the CFC Debtor's servicing activities" which included Green Tree Financial Servicing Corporation (doc. # 42, Ex. 13 at p. 17, ¶ 18). It is undisputed that the Plaintiff did not file a claim in the Conseco bankruptcy case.

The Plaintiff's claims, as well as issues relating to the sufficiency of the Sale Order notice and the effect of the sale on the Plaintiff's alleged right of recoupment, should be (or should have been) brought before the Illinois Bankruptcy Court and not this Court. See In re Petrie Retail, Inc., 304 F.3d 223, 230 (2d Cir. 2002) ("A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders. . ." (citing In re Chateaugay Corp., 213 B.R. 633, 640 (S.D.N.Y. 1997))).

### C.    *The Validity of the Sale Order Is Not Properly Before this Court*

The Plaintiff argues, alternatively, that a right of recoupment cannot be enjoined by a § 363 sale order and thus the Sale Order is improper and unenforceable as written. Several courts have, in fact, determined that the right of recoupment is not itself a claim or "interest" for purposes of § 363, and hence may not be extinguished by a sale authorized under that provision. See Folger Adam Security, Inc. v. Dematteis/MacGregor, JV, 209 F.3d 252, 261 (3d Cir. 2000), In re Lawrence United Corp., 221 B.R. 661, 669 (Bankr. N.D.N.Y. 1998). On the other hand, and in this Court's view, more importantly in this case, it is a well-established principle that "'[i]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected.'" Celotex Corp. v. Edwards, 514 U.S. 300, 313 (1995) (internal citations omitted). Accordingly, even if a right is not within the bundle of rights that may be extinguished by a § 363 sale order, the Sale Order explicitly extinguished it. This Court is not the proper forum for the Plaintiff to collaterally challenge the validity of the provision in the Sale Order barring recoupment rights (which was never appealed[1]). Rather, the Plaintiff must bring her challenge to that provision in the Illinois Bankruptcy Court, as that court is the court of first instance. In the meantime, this Court must respect "judicial process" in general and the Sale Order in particular, and will not entertain a collateral challenge to it.[2]

### D.    *The Plaintiff's Due Process Argument Must Fail*

An extinguishment of the Plaintiff's rights to challenge her obligations to pay the Green Tree mortgage debt in this case might reasonably be characterized as unfair if the Plaintiff had had no notice of the Conseco bankruptcy, had had no opportunity to challenge the orders in the Conseco bankruptcy case, or had had no opportunity to otherwise assert claims against Conseco and the entity that purchased Conseco's servicing of Plaintiff's Note and Mortgage. But, she did. The Plaintiff zealously counters this

---

[1] Appeals from final orders of the bankruptcy court "may be taken only to the district court of the judicial district in which the bankruptcy judge is sitting." 28 U.S .C. § 158(a). Celotex notes "If respondents believed the Section 105 injunction [issued by the bankruptcy court, which the respondents sought to ignore] was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done." Celotex, 514 U.S. at 313.

[2] The Defendant also argues that *res judicata* – based on the result in the state court action -- precludes Plaintiff from raising claims that have previously been determined (doc. # 42, p. 5). However, in order for *res judicata* to apply, a four-part test must be met: "(1) The prior decision was a final judgment on the merits, (2) the litigants were the same parties, (3) the prior court was a court of competent jurisdiction, and (4) the causes of action were the same." Celli v. First Nat'l Bank of Northern New York (In re Layo), 460 F.3d 289, 292 (2d Cir. 2006). While the state court decision was a final judgment on the merits and that court was a court of competent jurisdiction, the litigants there (Mayer-Myers, Redman Homes and Guetti) were not the same as in this A.P. (Green Tree and Mayer-Myers) and the causes of action were not the same (fraud, breach of fiduciary duty, conversion, larceny by trick, breach of contract, warranty and covenant of good faith, negligence, consumer fraud and unfair or deceptive trade acts or practices, and willful and wanton conduct, in the state action, and breach of contract and breach of fiduciary duty in this action). Thus, *res judicata* does not bar the instant adversary proceeding. It is barred instead by the federal common law doctrine prohibiting collateral attacks on bankruptcy court orders. See Celotex, 514 U.S. at 313.

11

point, contending that she did not personally receive the Due Process Notice and insisting it would violate due process to enforce the Sale Order in a manner that prohibits her from litigating her defenses to this debt. Moreover, she maintains that even if she had received the notice, the notice is insufficient because it does not refer to the sale barring "defenses." These issues must be raised before the Illinois Bankruptcy Court since, as noted above, it retained jurisdiction over the implementation and interpretation of the Sale Order. But even if this Court had jurisdiction over the question, and were to address the Plaintiff's due process argument, the Plaintiff would not prevail. There is no dispute that the Vermont district court action was stayed after Conseco filed a Suggestion of Bankruptcy, which was served on the parties and entered on the docket, or that the district court declared that case "statistically closed due to the related matter currently pending in the United States Bankruptcy Court." Moreover, the Plaintiff does not dispute the Defendant's statement that she had actual knowledge of Conseco's bankruptcy filing (doc. # 46, ¶ 19). Instead, she states that she received "no notice of the bankruptcy" i.e., that she did not personally receive the actual Due Process Notice incorporated into the January 2003 Bidding Order (doc. # 28, Ex. 2).

Actual notice, such as that provided in the Suggestion of Bankruptcy, satisfies the due process requirement even if a party does not receive formal notice. See GAC Enters., Inc. v. Medaglia (In re Medaglia), 52 F.3d 451, 454-55 (2d Cir. 1995) (interpreting § 523(a)(3)(B) and holding that general knowledge of the filing of a bankruptcy case substitutes for particular knowledge of the bar date and did not violate constitutional due process requirements). When the Plaintiff received actual notice, she should have, at a minimum, inquired into the nature of the proceedings and taken steps to protect her interests, the very interests that she raises here. "Notice of facts which would incite a [person] of ordinary prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would disclose." Gradison v. Nat'l Bank of Commerce of Rochester, 231 F. 800, 809 (2d Cir. 1916) (internal quotations omitted). Had the Plaintiff made an inquiry into the Conseco bankruptcy case, she would have had notice of the claims bar date and the Sale Order, and could have formulated her strategy accordingly. Instead, she did nothing and has sought to challenge the orders entered in the Illinois case in this court, three years after the Sale Order became final. Hence, the Plaintiff is not entitled to relief based on her due process argument.

*E.     The Equities of the Case Do Not Support Granting Relief to the Plaintiff*

In addition to the mechanisms established through the sale procedure in the Illinois Bankruptcy case, the Plaintiff has had multiple opportunities to assert and litigate her alleged right of recoupment against Conseco. First, the Plaintiff could have reasserted her counterclaim in the Vermont district court action by moving to reopen that action once the Illinois action had been concluded. She did not do so. She also could have asserted her claims against Conseco by: (1) filing a proof of claim in Conseco's

12

bankruptcy case; (2) objecting to the Sale Order in Conseco's bankruptcy case; and (3) filing a separate claim in the Illinois Bankruptcy Court specifically related to the servicing of her loan as provided under paragraph 18 of the Sale Order. She availed herself of none of these opportunities.  Finally, the Plaintiff could have included Conseco, GTFSC, or Green Tree (depending upon when the suit was filed) in the Vermont state court litigation that she initiated against Redman Homes and Guetti.  She did not do so. The Court finds the equities of this case do not provide a basis for granting relief to the Plaintiff.

## CONCLUSION

Based upon the foregoing, the Court finds that (a) the Sale Order, by its plain language, precludes the Plaintiff's asserted defense of recoupment against Green Tree; (b) the Bankruptcy Court for the District of Vermont is not the proper forum for the Plaintiff's challenge to the legality or enforceability of the Sale Order entered in the Conseco case by the Bankruptcy Court for the Northern District of Illinois; and (c) neither the Plaintiff's due process argument nor her equitable relief arguments defeat the Defendant's right to judgment as a matter of law. Turning to the relief sought in the complaint, the Court holds there is no basis to subordinate the Defendant's claim in this bankruptcy case, or to treat the Defendant's claim in this case as a general unsecured claim.[3]  Accordingly, the Court grants the Defendant's motion for summary judgment for dismissal of the complaint and awards judgment in favor of the Defendant.

This constitutes the Court's findings of fact and conclusions of law.

March 14, 2007                                                                                                 Colleen A. Brown
Rutland, Vermont                                                                                         United States Bankruptcy Judge

---

[3] In the Complaint, the Plaintiff seeks, in the alternative to limit the Defendant's secured claim to the value of the collateral. That issue will be addressed in connection with Plaintiff's objection to claim in the Chapter 13 case.